**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(Boston Division)**

| | |
|---|---|
| RENAISSANCE WORLDWIDE, INC. ) | |
| ) | |
| Plaintiff/Counterclaim Defendant, ) | |
| ) | |
| v. ) | |
| ) | |
| CEDAR ENTERPRISE SOLUTIONS, INC. ) | Civil Action No. 04-CV-11047 PBS |
| ) | |
| Defendant/Counterclaim Plaintiff, ) | |
| ) | |
| and ) | |
| ) | |
| CEDAR USA HOLDINGS, INC. ) | |
| ) | |
| Counterclaim Plaintiff. ) | |

**MEMORANDUM IN OPPOSITION
TO RENAISSANCE WORLDWIDE, INC.'S MOTION
FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

**I. INTRODUCTION**

Defendant/Counterclaim Plaintiff Cedar Enterprise Solutions, Inc. ("CESI") and Counterclaim Plaintiff Cedar USA Holdings, Inc. ("Cedar USA"), by their undersigned counsel, respectfully submit this memorandum in opposition to the motion of Plaintiff/Counterclaim Defendant Renaissance Worldwide, Inc. ("Renaissance") for leave to file a First Amended Complaint.

CESI and Cedar USA oppose the motion because amendment to add claims against Cedar USA and Cedar Group plc arising out of the alleged default on a London,

U.K. office lease ("the London Lease") would be futile.[1]  The plain language of the agreements on which Renaissance purports to base its new claim creates no obligation on Cedar USA or Cedar Group plc whatsoever relating to the London Lease.  Renaissance itself makes only vague allegations in support of its $400,000-plus claim, and cites no contract language that creates any legal obligation related to the London Lease.  The claim appears to be tactically rather than contractually motivated.[2]

## II.  STATEMENT OF FACTS

This case generally relates to the acquisition by Cedar USA of The Hunter Group, Inc., from Renaissance.  That acquisition was effected pursuant to a September 2000 Stock Purchase Agreement.  (First Am. Compl. ¶ 5.)  A copy of the Stock Purchase Agreement is attached as Exhibit A to the proposed First Amended Complaint.  Under the Stock Purchase Agreement, Cedar USA purchased stock held by Renaissance in Renaissance Worldwide Consulting Private Limited ("RWL") and The Hunter Group, Inc., (id.), now known as CESI.  In connection with the sale, The Hunter Group also entered into a "Transition Services Contract" with various Renaissance entities.  (Id. ¶ 6.)  A copy of the Transition Services Contract is attached as Exhibit B to the proposed First Amended Complaint.

Both the Stock Purchase Agreement and the Transition Services Contract contain various covenants, representations and warranties, and create indemnifications that run

---

[1] Renaissance did not certify that counsel conferred and attempted in good faith to resolve the issue, as required by Local Rule 7.1(a)(2).  Indeed, no such conference occurred.
[2] There appears to be a pattern developing suggesting a disappointing lack of rigor in Renaissance's pre-filing diligence.  While Cedar believes that it will ultimately prevail on all of Renaissance's claims, it will be asking Renaissance to voluntarily dismiss its $1,000,000 claim for default on the Chicago lease because Renaissance's own documentation confirms what Cedar had told Renaissance all along regarding the Chicago lease claim, i.e., that Renaissance had expressly requested that Cedar vacate the premises as Renaissance was terminating the lease.  This recent attempt to bring the London Lease into this litigation demonstrates the same careless approach (intentional or otherwise).

between the parties to the agreements. While they address many specific obligations, including specific leases in the United States that are a subject of the existing litigation, they do *not* impose obligations on Cedar USA or Cedar Group plc related to the London Lease. Renaissance now seeks to create a claim based on alleged default under the London Lease, seemingly irrespective of the fact that neither of the agreements it cites in the proposed First Amended Complaint, by their express terms, creates any legal duty that would support Renaissance's proposed new claims.

The London Lease relates to office space that RWL leased from Coal Pension Properties Limited in 1999, before its sale to Cedar USA. (Id. ¶ 13.) Renaissance guarantied the London Lease obligations of RWL to Coal Pension Properties Limited. (Id. ¶ 14.) After RWL defaulted under the London Lease, Coal Pension Properties Limited asserted claims against Renaissance as guarantor. (Id. ¶ 15.) Renaissance alleges that in 2004, it settled the claims of Coal Pension Properties Limited for a payment of $348,706.23. (Id. ¶ 16, Exhibit D.) In addition, Renaissance claims that it incurred attorneys' fees and costs of $77,614.23 in connection with the settlement. (Id.)

On the basis of these factual allegations, the First Amended Complaint asserts that, under the Stock Purchase Agreement, including Section 8.2 and 8.4 thereto, Cedar USA and Cedar Group plc are obligated to indemnify Renaissance for the above settlement payment, attorneys' fees and costs. (Id. ¶¶ 17-18, 24-25; See id. Ex. D § 8 ("Indemnification").)[3] Renaissance also vaguely suggests that its claims for payments made under the London Lease also may arise under the Transition Services Contract. (See,

---

[3] Renaissance asserts in its motion that, under the Stock Purchase Agreement, CESI is obligated to make sublease payments for the London Lease office space. (Mot. at 2.) As described below, this assertion is contrary to the plain language of the Stock Purchase Agreement. In any event, Renaissance omits this assertion from the First Amended Complaint. The assertion, accordingly, should not be considered in evaluating the futility of the amendment.

3

e.g., Renaissance Mot. to Amend at 1-2 (describing Renaissance's proposed new claims as "resulting from the execution of a certain Stock Purchase Agreement and Transition Services Contract") and its First Am. Compl. at ¶¶ 17, 24 ("pursuant to, *among other provisions,* Sections 8.2 and 8.4…") (emphasis added).)  It does not, however, specify any provision of the Transition Services Contract that it contends is specifically relevant to its new London Lease claims.

### III.  ARGUMENT

**A.  Futile Amendments Are Not Allowed.**

Courts will deny a motion to amend a complaint where amendment is futile. Maine State Bldg. and Constr. Trades Council v. United States, 359 F.3d 14, 18-19 (1st Cir. 2004) (affirming denial of motion to amend on the basis of futility).  "'Futility'" means that the complaint, as amended, would fail to state a claim upon which relief could be granted." Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996) (affirming denial of motion to amend complaint) (citations omitted)

"In reviewing for 'futility,' the district court applies the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion." Id.  Under Rule 12(b)(6), dismissal is appropriate where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Gorski v. New Hampshire Dep't of Corrections, 290 F.3d 466, 473 (1st Cir. 2002).  The court must accept all well-pleaded facts as true, but "need not credit a complaint's 'bald assertions' or legal conclusions." Glassman, 90 F.3d at 628 (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1216 (1st Cir. 1996)).

When evaluating a motion to dismiss under Rule 12(b)(6), the court will consider the content of any exhibit to the complaint. Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000); Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996) (a court "may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion [to dismiss] into one for summary judgment."). If the exhibit "contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." Clorox Co., 228 F.3d at 32 (quoting Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449, 454 (7th Cir. 1998) (citing "well-settled rule").

**B.    Renaissance's Amendment Is Futile Because It Fails
       To State a Claim Against Cedar USA or Cedar Group plc.**

The Court should deny Renaissance's motion to amend because the amendment is futile. Renaissance claims indemnification from Cedar USA and Cedar Group plc pursuant to the Stock Purchase Agreement.[4] Renaissance fails to state a claim for indemnification for its London Lease losses because, under the plain language of the Stock Purchase Agreement, Cedar USA and Cedar Group plc assumed no such indemnification obligation.

Section 8.2(b) of the Stock Purchase Agreement sets forth the indemnification obligations of Cedar USA and Cedar Group plc. (First Am. Compl. Ex. D, § 8, pp. 30-32.)

---

[4] To the extent that Renaissance also may seek to support its claims by reference to the Transition Services Contract, those efforts fail too, as demonstrated below.

5

It provides, in pertinent part:

> Each of [Cedar USA and Cedar Group plc] hereby agree to indemnify, defend and hold harmless [Renaissance] . . . against and in respect of all Losses after the Closing resulting from: (i) any breach of any representation or warranty made by [Cedar USA or Cedar Group plc] herein of in any certificate delivered pursuant to this Agreement, and (ii) any breach or non-performance by [Cedar USA or Cedar Group plc] of any covenant, agreement or obligation to be performed by it hereunder.

(Id. § 8.2(b).) Other provisions in Section 8 limit the parties' respective indemnification obligations and describe rights relating to third-party claims against an indemnified party, but only Section 8.2 defines the matters for which a party may seek indemnification.

To state a claim for indemnification regarding the London Lease, Renaissance must demonstrate that Cedar USA or Cedar Group plc breached "any representation or warranty" or breached or failed to perform "any covenant, agreement or obligation" contained in the Stock Purchase Agreement, and that the breach or non-performance caused the London Lease losses. (Id. § 8.2(b).) Renaissance fails to state a claim for indemnification because Cedar USA and Cedar Group plc made or assumed no representation, warranty, covenant, agreement, or obligation concerning the London Lease. Without a representation, warranty, covenant, agreement or obligation, there is no breach. Without a breach, there is no obligation to indemnify.

This simple analysis can be undertaken based on the plain language of the Stock Purchase Agreement, which explicitly and clearly spells out the obligations that Cedar USA and Cedar Group plc agreed to assume. Section 3 of the Stock Purchase Agreement contains the representations and warranties of Cedar USA and Cedar Group plc. It contains no representation or warranty concerning the London Lease. Section 4 contains the

6

covenants and agreements of the parties. It contains no covenant or agreement by Cedar USA or Cedar Group plc concerning the London Lease. Sections 6 and 7 contain the conditions to the parties' obligation to consummate the sale. They contain no condition or obligation of Cedar USA or Cedar Group plc concerning the London Lease. In summary, in no section of the Stock Purchase Agreement do Cedar USA or Cedar Group plc assume contractual liability of any kind concerning the London Lease.

Indeed, the only instances where the Stock Purchase Agreement even references the London Lease are in sections relating solely to the obligations of Renaissance, not Cedar USA or Cedar Group plc. Section 2 of the Stock Purchase Agreement contains the representations and warranties of Renaissance. In Schedule 2.23 of Section 2.23, Renaissance disclosed the London Lease. Section 4.20 states that the Renaissance "will use commercially reasonable efforts to cause" RWL to enter into a sublease for the London Lease property. Again, this section is an obligation of Renaissance alone.

To the extent that Renaissance may attempt to assert an indemnification claim under the Transition Services Contract, its efforts fare no better. The indemnification provisions of the Transition Services Contract relative to leases are contained in Statement of Work II – Leased Office Space. (See First Am. Compl., Ex. B, § 2.) Statement of Work II expressly concerns three, and only three, leased properties: those in Chicago, New York and Atlanta. It does not, however, support Renaissance's claim for indemnification for the London Lease losses. Statement of Work II does not reference or in any way or even relate to the London Lease; its provisions concern the three leases in the United States alone. Moreover, even if it did relate to the London Lease, Cedar USA and Cedar

7

Group plc are not parties to the Transition Services Contract, so it could not impose duties on them.

Cedar USA and Cedar Group plc, therefore, incur no indemnification obligation thereunder with respect to the London Lease under either agreement.  Because the express terms of its proposed pleading, including the attached contracts, make clear that Renaissance fails to state a claim against Cedar USA and Cedar Group plc for indemnification, its amendment is futile.  This Court, therefore, should deny the Motion for Leave File a First Amended Complaint.  See Vengerik v. New York Life Ins. Co., Civ. No. 92-40123-GN, 1993 U.S. Dist. LEXIS 4036 (D. Mass. Mar. 30, 1993) (denying motion to amend complaint to add new defendant where defendant not liable for breach of contract and amendment would be futile).

## IV.  CONCLUSION

For the foregoing reasons, CESI and Cedar USA respectfully request that this Court enter an Order denying Renaissance's Motion for Leave to File a First Amended Complaint.

DATED:      October 6, 2004           CEDAR ENTERPRISE SOLUTIONS, INC.
                                      and CEDAR USA HOLDINGS, INC.
                                      By Counsel


                                      s/Dustin F. Hecker
                                      _____
                                      Deborah B. Baum
                                      Matthew A. Anzaldi
                                      SHAW PITTMAN LLP
                                      2300 N Street, N.W.
                                      Washington, D.C. 20037-1128
                                      (202) 663-8000 (tel.)
                                      (202) 663-8007 (fax)

                                      Dustin F. Hecker
                                      POSTERNAK BLANKSTEIN
                                      & LUND LLP
                                      The Prudential Tower
                                      800 Boylston Street
                                      Boston, Massachusetts  02199-8004
                                      (617) 973-6131 (tel.)
                                      (617) 722-4927 (fax)

                                      Counsel for CESI and Cedar USA

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of October 2004, the foregoing Memorandum in Opposition to Renaissance Worldwide Inc.'s Motion for Leave to File First Amended Complaint was served first class mail, postage prepaid, on the following counsel of record:

Lewis J. Cohn, Esq.
Michael H. Theodore, Esq.
25 Burlington Mall Road, 6th Floor
Burlington, Massachusetts 01803
*Counsel for Renaissance Worldwide, Inc.*


s/Dustin F. Hecker