Exhibit B

## TRANSITION SERVICES CONTRACT

This Transition Services Contract (this "Transition Contract") is made as of the 20th day of October, 2000, by and between (i) **Renaissance Worldwide, Inc.** ("Seller"), (ii) **Renaissance Worldwide IT Consulting Services, Inc.**, a Delaware corporation ("ITCS"), (iii) **The Hunter Group, Inc.**, a Maryland corporation, and (iv) **Renaissance Worldwide Consulting Private Limited**, a company formed under the law of India (The Hunter Group, Inc. and Renaissance Worldwide Consulting Private Limited, collectively, "Transferred Companies").

WHEREAS, pursuant to a Stock Purchase Agreement among Seller, Cedar USA Holdings, Inc. ("Cedar-US") and Cedar Group Plc ("Cedar-UK") (collectively, Cedar-US and Cedar-UK are referred to herein as the "Buyer"), dated as of September 20, 2000 (the "Purchase Agreement"), the Buyer shall purchase all of the outstanding stock of Transferred Companies from Seller; and

WHEREAS, beginning immediately after the consummation of the transactions contemplated by the Purchase Agreement, Transferred Companies desire to receive certain services from Seller and Seller is willing to provide such services to Transferred Companies, on the terms set forth herein.

WHEREAS, beginning immediately after the consummation of the transactions contemplated by the Purchase Agreement, Seller desires to receive certain services from Transferred Companies, and Transferred Companies are willing to provide such services to Seller, on the terms set forth herein.

NOW, THEREFORE, in consideration of the premises and of the mutual agreements, provisions, covenants and conditions contained in this Transition Contract, Seller, ITCS and Transferred Companies hereby agree as follows:

1.  **Services.** Each party will provide to the other party certain transition services ("Services") as set forth in any Statement of Work which specifically references this Transition Contract (each, a "Statement of Work"). The terms and conditions of this Transition Contract shall apply to any Statement of Work executed by the parties during the term of this Transition Contract and each Statement of Work may contain additional terms and conditions specific to that Statement of Work.

2.  **Compensation.** Each party will compensate the other party for Services by paying certain fees and costs as set forth in the applicable Statement of Work.

3.  **Term and Termination.** (a) The term of this Transition Contract shall be as set forth in the applicable Statement of Work and starting on the date hereof.

(b) Except as set forth on the applicable Statement of Work, either party may terminate this Transition Contract or any Statement of Work upon thirty (30) days written notice to the other party for such other party's failure to comply with any material term or condition of this

Transition Contract, or the applicable Statement of Work, unless such failure is cured within such period. The termination of any particular Statement of Work shall have no effect on any other Statement of Work. In the event of any termination or expiration of this Transition Contract or any Statement of Work, each party shall remain responsible for all obligations or liabilities arising from Services delivered prior to the date of termination.

4.  **Disclaimer of Warranties.** EACH PARTY DISCLAIMS ANY AND ALL WARRANTIES, EXPRESS OR IMPLIED (INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE OR ANY WARRANTY PERTAINING TO THIRD PARTY PRODUCTS OR SERVICES), OTHER THAN THOSE EXPRESSLY SET FORTH HEREIN, AND NO REPRESENTATIVE OF EITHER PARTY IS AUTHORIZED TO GIVE ANY ADDITIONAL WARRANTY.

5.  **Confidential Information.** Each party to this Transition Contract (each, a "Recipient") shall protect and keep confidential all non-public information disclosed by the other party (each, a "Discloser") and identified as confidential by the Discloser ("Confidential Information"), and shall not, except as may be authorized by Discloser in writing, use or disclose any such Confidential Information during and after the term of this Transition Contract. These obligations of confidentiality shall not apply to any information which: (i) is or becomes publicly available, through no fault of Recipient; (ii) is disclosed to Recipient by a third party having no obligation of confidentiality to Discloser; (iii) is independently developed by Recipient; or (iv) is required to be disclosed as a matter of law.

6.  **Delays.** Neither party shall be liable for delays caused by fire, accident, labor dispute, war, insurrection, riot, act of government, act of God, or any other cause reasonably beyond its control; but each party shall use all reasonable efforts to minimize the extent of any such delay.

7.  **Independent Contractor Status.** The parties hereto are independent contractors. The Transition Contract is not intended to create, and nothing in this Transition Contract shall be deemed to create, any form of partnership, principal-agent relationship, employer-employee relationship, joint venture or any similar relationship between the parties hereto, and the existence of any such relationship is expressly disclaimed.

8.  **Assignment and Subcontracting.** Neither party may assign its rights or delegate its obligations hereunder (except to subsidiaries or affiliates) without the prior written consent of the other party, which consent will not be unreasonably withheld, provided that either party may assign its right to receive monies due and becoming due.

9.  **Waiver.** Neither party shall be deemed to have waived any provision hereof, or any provision of any Statement of Work, unless such waiver is in writing and executed by a duly authorized officer of the waiving party. No waiver by either party of any provision hereof, or any provision of any Statement of Work, shall constitute a waiver of such provision on any other occasion whether or not similar. No waiver by either party of any provision hereof or any

provision of any Statement of Work shall be deemed to constitute a waiver of any other provision of this Transition Contract or any other provision of any Statement of Work, whether or not similar.

10. **Separability.** The invalidity or unenforceability, in whole or in part, of any provision, term, or condition hereof shall not affect the validity or enforceability of the remainder of such provision, term or condition or of any other provision, term, or condition.

11. **Governing Law.** This Transition Contract will be governed by the laws of the Commonwealth of Massachusetts without regard to its rules concerning conflicts of laws.

12. **Interpretation.** Captions of the sections of this Transition Contract and those contained in any Statement of Work are for reference purpose only and do not constitute terms or conditions hereof. The parties acknowledge that they have thoroughly reviewed this Transition Contract and each Statement of Work and bargained over its terms. Accordingly, neither party shall be considered responsible for the preparation of this Transition Contract or any Statement of Work, which shall be deemed to have been prepared jointly by both parties. The provisions of the Transition Contract and each Statement of Work allocate the risks between the parties. The terms and conditions included herein and therein reflect this allocation of risk, and each provision herein and therein is part of the bargained-for consideration of this Transition Contract.

13. **Survival.** The terms and provisions of Sections 2, 5, and the indemnification provisions of the applicable Statements of Work, shall survive expiration or termination of this Transition Contract.

14. **Entire Transition Contract.** This Transition Contract and any incorporated Statement(s) of Work constitute the entire Transition Contract between the parties with respect to the Services. In the event that any provisions in any incorporated Statement(s) of Work are in conflict with the provisions in this Transition Contract, then the provisions in this Transition Contract shall prevail over any such conflicting provisions. Any pre-printed terms and conditions of either party's business forms shall be without legal effect with respect to this Transition Contract or any Statement(s) of Work. This Transition Contract may not be amended unless such amendment is in writing and signed by both parties hereto.

15. **Notices.** All notices, requests, demands, claims and other communications hereunder shall be in writing and shall be sent by facsimile or overnight courier. Any notice, request, demand, claim, or other communication hereunder shall be deemed duly given, as applicable, (a) upon confirmation of receipt of facsimile (provided that a second copy is also sent by U.S. mail or reputable overnight courier service), or (b) two business days following the date sent when sent by overnight delivery through Federal Express, United Parcel Service or other reputable overnight courier service postage prepaid at the following address:

If to Seller or to ITCS, then to:

VP and General Counsel
Renaissance Worldwide, Inc.
52 Second Avenue, MS 4-8
Waltham, MA 02451
Telecopier: +781-290-3913

If to the Buyer or to any Transferred Company, then to:

Cedar Group Plc
Cedar House
78 Portsmouth Road
Cobham
Surrey KT11 1HY, United Kingdom
Telecopier: +44 (0) 1932 584001

16. **Counterparts.** This Transition Contract may be executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties have caused this Transition Contract to be executed by their respective duly authorized officers as of the date set forth above.

RENAISSANCE WORLDWIDE, INC.

By: _[signature]_
Name: Joseph F. Pesce
Title: Chief Financial Officer
Date: October 20, 2000

THE HUNTER GROUP, INC.

By: _[signature]_
Name: Michael D. Hosie
Title: Vice President
Date: October 20, 2000

RENAISSANCE WORLDWIDE
IT CONSULTING SERVICES, INC.

By: _[signature]_
Name: Christopher D.T. Guiffre
Title: Vice President
Date: October 20, 2000

RENAISSANCE WORLDWIDE
CONSULTING PRIVATE LIMITED

By: _[signature]_
Name: Michael D.T. Hosie
Title: Vice President
Date: October 20, 2000

## Statement of Work I – Consulting Services

This engagement letter shall serve as a Statement of Work to the Transition Services Contract, dated as of October 20, 2000 ("Transition Contract"), which is hereby incorporated by reference. Capitalized terms used herein but not otherwise defined shall have the meanings assigned to them in the Transition Contract.

1. **Description of Services.**

The Hunter Group, Inc. and ITCS agree that from on and after the date of the Closing of the transactions contemplated by the Purchase Agreement, for a period not to exceed one (1) year from such date, each party will continue to make available to the other party the consultants or employees, who provide information technology consulting services ("Services").

2. **Fees.**

Each party, as identified in the table below, shall pay to the other party the cost of each individual. The hourly rate of each individual is set forth below[1]; provided, however, that if any of the following persons is no longer employed by the party providing such person or is otherwise unavailable to provide Services to the other party as contemplated hereby for any reason (other than an election by the party providing such person to reassign such person), the parties shall work together in good faith to attempt to arrive at satisfactory arrangements in order to address such unavailability of such person.

| CONSULTANT | EMPLOYEE OF: | CONTRACTED TO: | RATE: | CLIENT |
|---|---|---|---|---|
| Mark Braxton | THG[2] | ITCS | $187.50 | GM Onstar TIW/Dolphin |
| Jessica Eberle | THG | ITCS | $130.00 | ADP Iowa |
| Ken McDevitt | THG | ITCS | $175.00 | Landmark |
| Joe Rabenstein | THG | ITCS | $200.00 | Commonwealth of Mass |
| Richard George | THG | ITCS | < > | ADP Iowa |
| Mitchell LaFrance | THG | ITCS | $84.35 | Renior Project |
| David Dearth | THG | ITCS | $72.71 | Renior Project |
| Lori Norman | THG | ITCS | $59.88 | Renior Project |
| Ingrid Lederman | THG | ITCS | $53.81 | Renior Project |
| Edward Kotarba | THG | ITCS | $57.95 | Renior Project |
| Eileen Czyrklis | THG | ITCS | $58.18 | Renior Project |
| Jim Tammaro | THG | ITCS | $57.44 | Renior Project |

---

[1] The cost of any individual may increase as a result of customary raises or promotions.
[2] The Hunter Group, Inc. ("THG")

Evergreen SOW I (Consulting Svcs) CLOSING.doc        - 1 -                                    Rev. 10/18/00

| Rajash Gopalakrishnan | ITCS | THG | $91.50 | THG |
| Adam Richman | ITCS | THG | $80.00 | First Union |
| Sudhir Surendran | ITCS | THG | $108.00 | GM |
| Michael Yeung | ITCS | THG | $143.00 | MBNA Bank |

3.  **Invoicing.**

Each party will invoice the other party for all costs and expenses on a monthly basis. Each party agrees to pay the costs and expenses within thirty (30) days of the date of any invoice and interest at the rate of 1.5% per month on any overdue amounts.

4.  **Change Order.**

If either party wishes to change the scope of the Services provided hereunder, then such party shall present to the other party a proposal describing the proposed change in services and the proposed corresponding change in cost (a "Change Order"). The parties agree to negotiate in good faith toward mutual agreement of any requested Change Order. Neither party, however, shall be obligated to make any changes to the services provided costs related hereto unless and until a Change Order is executed by both parties. If both parties execute a Change Order, it shall become effective upon the date set forth in the Change Order.

5.  **Other Terms and Conditions.**

    a.  Limited Warranty.
    Each party that provides Services ("Provider") represents and warrants to the other party ("Receiver") that (i) the consultant or employee who provides such Services will do so in a workmanlike manner consistent with industry standards and (ii) to the best of its knowledge, Services will not violate the intellectual property rights of any third party, PROVIDED, HOWEVER, THAT EACH PROVIDER EXPRESSLY DISCLAIMS ANY WARRANTY RELATING TO INFRINGEMENT RESULTING FROM ITS USE OF TOOLS, INSTRUCTIONS, SPECIFICATIONS, OR OTHER MATERIALS PROVIDED BY RECEIVER TO PROVIDER, AND PROVIDED, FURTHER, THAT THE FOREGOING WARRANTY SHALL NOT APPLY WHERE THE RECEIVER OR ANY THIRD PARTY MODIFIES ANY ASPECT OF THE SERVICES.

    EACH PROVIDER EXPRESSLY DISCLAIMS ANY WARRANTY RELATING TO SO-CALLED YEAR 2000 COMPLIANCE FOR SERVICES.

    b.  Indemnification.
       (1) Each Provider agrees to indemnify, hold harmless and defend each Receiver from and against any and all judgments, liabilities, damages, losses, expenses and costs (including, but not limited to, court costs and reasonable attorney fees) incurred by the Receiver and for which Receiver provides notice to Provider within thirty (30) days of such claim which relate to: (i) willful misconduct or negligent acts or omissions on the part of Provider in

connection with Services; (ii) Provider's breach of any representation, warranty or obligation in this Statement of Work; or (iii) the violation of any third party's intellectual property rights arising in connection with the provision of Services subject to (b)(2) hereof.

 (2) In the event of any infringement or claimed infringement, the Receiver's sole remedy shall be that Provider, in its sole discretion, shall: (i) modify the infringing Services to be non-infringing; (ii) obtain a license for Receiver to use the infringing Services; or (iii) terminate the Receiver's right to use the infringing Services and refund to Receiver all amounts paid for such infringing Services.

c. Intellectual Property.

 (1) Each Provider assigns to each Receiver all rights, title, and interest in and to any inventions (patentable or otherwise), discoveries, improvements or copyrightable works (collectively, "Intellectual Property") which Provider creates in connection with its performance of Services hereunder. At Receiver's expense, Provider shall provide all reasonable assistance requested by Receiver in its protection of the Intellectual Property.

 (2) Notwithstanding anything to the contrary in (c)(1), Receiver acknowledges and agrees: (a) that Provider has the right to re-use any of its know-how, ideas, concepts, methods, processes, or similar information, however characterized, whether in tangible or intangible form, and whether used by Provider in the performance of Services or not, at any time and without limitation, (b) that Provider retains ownership of any and all of its intellectual property rights that existed prior to the date it commenced providing Services for Receiver including, but not limited to, all methods, concepts, designs, reports, programs, and templates and (c) that any third-party which has provided software products to Receiver retains all right, title, and interest in its software products.

d. Liability Limitation.
IN NO EVENT SHALL EITHER PARTY HERETO IN CONNECTION WITH THIS STATEMENT OF WORK HAVE ANY LIABILITY FOR ANY INDIRECT, INCIDENTAL, EXEMPLARY, SPECIAL OR CONSEQUENTIAL DAMAGES (INCLUDING, BUT NOT LIMITED TO, DAMAGES ARISING FROM LOSS OF PROFITS OR DATA) EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

[Blank space left intentionally]

ACCEPTED AND AGREED:

| The Hunter Group, Inc. | | Renaissance Worldwide IT Consulting Services, Inc. | |
|---|---|---|---|
| By: | */s/ Michael Hosie* | By: | */s/ CTG* |
| Name: | Michael D. Hosie | Name: | Christopher D.T. Guiffre |
| Title: | Vice President | Title: | Vice President |
| Date: | October 20, 2000 | Date: | October 20, 2000 |

## Statement of Work II – Leased Office Space

This engagement letter shall serve as a Statement of Work to the Transition Services Contract, dated as of October 20, 2000 ("Transition Contract"), which is hereby incorporated by reference. Capitalized terms used herein but not otherwise defined shall have the meanings assigned to them in the Transition Contract.

1. **Description of Services.**

The Hunter Group, Inc. and Seller agree that, from on and after the date of Closing of the transactions contemplated by the Purchase Agreement, Seller shall continue to make available to The Hunter Group, Inc. the office space at the locations listed below ("Leases"), to the extent it can, and The Hunter Group, Inc. shall continue to pay to Seller all costs and expenses associated with the Leases, as set forth below. The Hunter Group, Inc. shall occupy the portion of each location that is shown on the table in Section 2 below. Such portion may change by prior written agreement of the parties to this statement of work. Such payment obligations shall continue until the end of each respective Lease term, including any extensions (which shall be exercised at the sole discretion of Seller), as applicable, or the successful assignment or sublease of any respective Lease (if agreed to by Seller and The Hunter Group, Inc.) to The Hunter Group, Inc., whichever is earlier. The parties acknowledge that they may choose not to execute any assignment or sublease of any Lease. The Hunter Group, Inc. agrees to comply with the terms and conditions of the Leases under which Seller makes each office space available to The Hunter Group, Inc. as if it were Seller, except as set forth herein. Seller shall not be restricted from assigning, subleasing or terminating any Lease. In such event, Seller shall provide 30-days advance notice to The Hunter Group, Inc.

2. **Costs and Expenses.**

The Hunter Group, Inc. agrees to pay the monthly obligations set forth below, in addition to, its pro rata share of any related costs and expenses specified in the Leases and required to be borne by Seller, including but not limited to operating expenses and real estate taxes, provided, however, that The Hunter Group, Inc. shall pay the full amount of any such costs and expenses that apply to The Hunter Group, Inc. in connection with its occupancy of the leased space.

[Blank space left intentionally]

| LOCATION | LESSEE | OCCUPANT(S) | MONTHLY OBLIGATION* |
|---|---|---|---|
| Atlanta, GA<br>15 Piedmont Center, 3575 Piedmont Rd., Ste 1200, 30305<br><br>Lease expires: March 8, 2006 | Renaissance Worldwide, Inc. | THG (approximately 19,471 sq. ft.)<br><br>Renaissance Worldwide, Inc. (various subsidiaries) | $40,561.78<br><br>$5,207.00 (GCC)**<br>$2,432.64 (RSW)<br>$5,720.00 (BSD)<br>$7,102.67 (ITCS) |
| Chicago, IL<br>8420 West Bryn Mar, 60631<br><br>Lease expires: September 30, 2007 | Renaissance Worldwide, Inc. | THG (approximately 4,515 sq. ft.)<br><br>ITCS | $9,695.22<br><br>$21,153.78 |
| New York, NY<br>101 E. 52nd Street, Ste. 301, 10022<br><br>Lease expires: October 31, 2008 | Renaissance Worldwide, Inc. | THG (approximately 7,664 sq. ft.)<br><br>ITCS | $28,009.79<br><br>$22,472.38 |

\* The monthly obligation does not include operating expenses, real estate taxes and other charges that The Hunter Group, Inc. will be obligated to pay over the course of its occupancy; provided, however, that The Hunter Group, Inc. may at any time audit any of these items upon 30 days' prior notice to Seller.

\*\* GCC – Gov Connect, Inc.; RSW – Renaissance Strategy Worldwide, Inc.; BSD – Business Solutions Development; ITCS – Renaissance Worldwide IT Consulting Services, Inc.; THG – The Hunter Group, Inc.

3.   Invoicing.

The Hunter Group, Inc. agrees to pay to Seller all costs and expenses in advance on the first of each month and interest at the rate of 1.5% per month on any overdue amounts.

4.   Indemnity.

Buyer agrees that it shall indemnify, hold harmless and defend Seller from and against any and all judgments, liabilities, expenses and costs (including, but not limited to attorney's fees) which relate to (i) The Hunter Group, Inc.'s failure to comply with the terms and conditions of each leasehold as these terms and conditions apply to Seller; (ii) any act or omission relating to The Hunter Group, Inc.'s use of, departure from, or presence in, the leased space; or (iii) any breach of this Statement of Work. This indemnity shall survive any termination or expiration of this Statement of Work.

[Blank space left intentionally]

ACCEPTED AND AGREED:

| | |
|---|---|
| The Hunter Group, Inc. | Renaissance Worldwide, Inc. |
| By: *(signature)* | By: *(signature)* |
| Name: Michael D. Hosie | Name: Joseph F. Pesce |
| Title: Vice President | Title: Chief Financial Officer |
| Date: October 20, 2000 | Date: October 20, 2000 |

<u>**Statement of Work III – India**</u>

This engagement letter shall serve as a Statement of Work to the Transition Services Contract, dated as of October <u>20</u>, 2000 ("Transition Contract"), which is hereby incorporated by reference. Capitalized terms used herein but not otherwise defined shall have the meanings assigned to them in the Transition Contract.

1. **Description of Services.**

For a period of six (6) months ("Support Period") following the date of closing of the transactions contemplated by the Purchase Agreement among Transferred Companies and Seller, dated September <u>20</u>, 2000, Transferred Companies will continue to make available to ITCS certain items, including but not limited to, fax machines, telephones, printers, computers, computer monitors, copiers, office furniture (including meeting rooms), overhead projectors, modems, and cellular phones in addition to office space located at 703 Nirman Kendra Mahalazmi, Bombay, India 400011 ("Equipment").

- Transferred Companies will also continue to make available to ITCS, as long as ITCS requests, the employees set forth below:

    (i)   Sanjiv Anand
    (ii)  Kusum Patel
    (iii) Vinod Menon
    (iv)  Aarti Asnani
    (v)   Sudir Sharma[1]

- Transferred Companies acknowledge that ITCS or an affiliate shall ultimately hire these employees (other than Sanjiv Anand).

- Transferred Companies will continue to provide full Internet access and use of e-mail accounts during the Support Period.

- No additional services will be provided under this Statement of Work. Any requirement for additional services or equipment shall be treated as a separate transaction.

2. **Fees.**

ITCS shall pay Transferred Companies the costs of each individual. The cost of each individual is set forth below[2]:

| <u>Consultant</u> | <u>Monthly Rate</u> |
|---|---|
| Sanjiv Anand | $ 1,500 |

---

[1] Sudhir Sharma has been issued an offer letter but has not accepted as of the date of this schedule.
[2] The cost of any individual may increase as a result of customary raises and changes in benefit plans or promotions.

| | |
|---|---|
| Kusum Patel | $ 2,047.34 |
| Vinod Menon | $ 691.28 |
| Aarti Asnani | $ 326.70 |
| Sudir Sharma | [TBD but estimated at $674.32] |

3.   **Invoicing.**

Transferred Companies will invoice ITCS for all costs and expenses on a monthly basis. ITCS agrees to pay the costs and expenses within thirty (30) days of the date of any invoice.

ACCEPTED AND AGREED:

The Hunter Group, Inc.

By: *[signature: Michael D. Hosie]*

Name: __Michael D. Hosie__

Title: __Vice President__

Date: __October 20, 2000__

Renaissance Worldwide Consulting Private Limited

By: *[signature: Michael D. Hosie]*

Name: __Michael D. Hosie__

Title: __Vice President__

Date: __October 20, 2000__

Renaissance Worldwide IT Consulting Services, Inc.

By: *[signature]*

Name: __Christopher D.T. Guiffre__

Title: __Vice President__

Date: __October 20, 2000__

## Statement of Work IV -- Equipment

This engagement letter shall serve as a Statement of Work to the Transition Services Contract, dated as of October 20, 2000 ("Transition Contract"), which is hereby incorporated by reference. Capitalized terms used herein but not otherwise defined shall have the meanings assigned to them in the Transition Contract.

**1.     Description of Services, Costs and Expenses.**

The Hunter Group, Inc. and Seller agree that, from on and after the date of closing of the transactions contemplated by the Purchase Agreement, Seller shall continue to make available, for the use of The Hunter Group, Inc., to the extent it can, all equipment described in Exhibit A to this Statement of Work used by The Hunter Group, Inc. or its subsidiaries and leased by Seller or an affiliate of Seller ("Equipment") and The Hunter Group, Inc. shall pay to Seller all costs and expenses associated with the Equipment. Such payment obligations shall continue until The Hunter Group, Inc.'s buyout of the Equipment or the return of such Equipment, as set forth in section 2 below, whichever is earlier. The Hunter Group, Inc. agrees to comply with the obligations of each lease that governs the Equipment as if it were Seller.

**2.     Buyout Costs.**

(a) The Hunter Group, Inc. may effectuate the buyout of all or some of the Equipment at any time during the term of the lease under which the Equipment is provided, to the extent such buyout is permitted by the applicable lessor and provided that the buyout does not impose any additional cost on Seller. The cost of any such buyout shall be determined by the applicable third party lessor pursuant to the applicable equipment lease. Notwithstanding the foregoing, the parties may agree otherwise solely with respect to effectuating the buyout of any equipment that is specified as being shared, such as a server.

(b) Notwithstanding anything to the contrary, if The Hunter Group, Inc. has not bought any or all of the Equipment pursuant to subsection 2.a above, at the expiration or termination of the applicable lease under which the Equipment is provided, at Seller's sole discretion, The Hunter Group, Inc. must either (i) buyout such Equipment, or (ii) return such Equipment as directed by Seller. The cost of any buyout shall be determined by the applicable third party lessor as if Seller elected to buyout such Equipment pursuant to the applicable equipment lease. Such Equipment shall be returned in the condition it was received less ordinary wear and tear.

**3.     Invoicing.**

Seller will invoice The Hunter Group, Inc. for all costs and expenses on a monthly basis. The Hunter Group, Inc. agrees to pay all costs and expenses within thirty (30) days of the date of any invoice and interest at the rate of 1.5% per month on any overdue amounts.

4. **Indemnity.**

Buyer agrees that it shall indemnify, hold harmless and defend Seller from and against any and all judgments, liabilities, expenses and costs (including, but not limited to attorney's fees) which relate to (i) any act or omission relating to The Hunter Group, Inc.'s use of the Equipment; (ii) the theft, damages and/or losses of the Equipment; or (iii) any breach of this Statement of Work. This indemnity shall survive any termination or expiration of this Statement of Work.

**ACCEPTED AND AGREED:**

| The Hunter Group, Inc. | Renaissance Worldwide, Inc. |
|---|---|
| By: *[signature]* | By: *[signature]* |
| Name: Michael D. Hosie | Name: Joseph F. Pesce |
| Title: Vice President | Title: Vice President |
| Date: October 20, 2000 | Date: October 20, 2000 |

Hunter Lease Costs as of 9-20-00

**Fleet (formerly BankBoston)**

| Schedule | Monthly Charge | Expiration Date |
|---|---|---|
| 34530-26 | $ 210.82 | 9/30/01 |
| 34530-28 | $ 11,400.19 | 9/30/01 |
| 34530-31 | $ 2,080.13 | 9/30/01 |
| 34530-37 | $ 8,093.51 | 11/30/01 |
| 34530-39 | $ 1,434.48 | 11/30/01 |

**Comdisco**

| Schedule | Quarterly Charge | Expiration Date |
|---|---|---|
| 01-SL84438-00 | $ 10,328.80 | 9/30/01 |
| 01-SL84438-01 | $ 5,677.85 | 12/31/01 |
| 01-SL84438-02 | $ 9,079.99 | 3/31/02 |
| 01-SL84438-03 | $ 19,188.87 | 6/30/02 |
| 01-SL84438-04 | $ 8,180.75 | 9/30/02 |
| 01-SL84438-05 | $ 6,362.16 | 12/31/02 |
| 01-SL84438-06 | $ 3,805.10 | 3/31/03 |
| 01-SL84557-01 | $ 26,489.71 | 12/31/00 |

**Fifth/Third Leasing**

| Schedule | Monthly Charge | Expiration Date |
|---|---|---|
| 75084-41-26 (2) | $ 647.77 | 2/28/01 |
| 75084-41-34 (10) | $ 115.70 | 5/31/01 |
| 75084-41-34 (11) | $ 405.64 | 5/31/01 |
| 75084-41-34 (13) | $ 231.22 | 5/31/01 |
| 75084-41-34 (14) | $ 1,871.26 | 5/31/01 |
| 75084-41-34 (15) | $ 3,466.96 | 5/31/01 |
| 75084-41-42 (20) | $ 100.43 | 6/30/01 |
| 75084-41-42 (22) | $ 4,716.11 | 6/30/01 |
| 75084-41-42 (23) | $ 321.34 | 6/30/01 |
| 75084-41-42 (24) | $ 1,541.98 | 6/30/01 |

**Sharp**

| Model | Schedule | Monthly Charge | Expiration Date |
|---|---|---|---|
| SF-2052 | 1515098-000 – New York, NY | $ 283.80 | 5/9/02 |
| AR-505 | 002-12969-00 – Irvine, CA | $ 320.00 | 9/1/02 |
| AR-505 PKGC | 1550987-000 – Dallas, TX | $ 334.00 | 12/14/02 |
| AR-505 PKGC | 1550976-000 – Atlanta, GA | $ 334.00 | 12/14/02 |

Hunt_ _ase Costs as of 9-20-00

**GE Capital**

AR-505 PKGC    1535-129-000 — Atlanta    $    334.00    12/16/02

| Model | Schedule | Monthly Charge | Expiration Date |
|---|---|---|---|
| Y2Kphone Systems | Bethesda —4092312-004 | $ 610.47 | 11/5/03 |
| DLP Projector | Baltimore — 4092312-005 | $ 302.22 | 12/28/03 |
| Office Furniture | Schedule 04 from schedules acquired from Met Life Furniture in Albany, NY and storage in MA | $ 1,206.55 | 5/31/03 |
| Office Furniture | Schedule 05 from schedules acquired from Met Life Furniture in Baltimore office | $ 2,399.41 | 5/31/03 |

E_.. .IBIT A

GE Capital, Schedule 4 -- Furniture Disposition

| QTY | Description | Unit cost | NY | NY $ | MA | MA $ | TOTAL |
|---|---|---|---|---|---|---|---|
| 1 | Hayworth Sargasso, copper sky | $ 674.22 | | | 1 | $ 674.22 | $ 674.22 |
| 180 | Exec. Swvl. Mech up'h shl. Up/arms, hard casters, standard version (2) wood base | 30.55 | 29 | | 29 | $ 885.95 | $ 885.95 |
| | Composites guest chair hourglass back, select functional option standard version | 359.04 | 2 | $ 748.08 | | | $ 748.08 |
| | Galerie occasional table round, 18" dia, 22" high, select functional option standard version (2) wood | 434.52 | 1 | $ 434.52 | | $ 434.52 | $ 434.52 |
| | MB Sync, pneu, BHA, cant w/o capshard casters, backtock, select functional option standard version | 450.26 | 6 | $ 2,701.56 | | $ 2,701.56 | $ 2,701.56 |
| | MB Sync, pneu, BHA, t/arm w/o capshard casters, backlock, select functional option standard version | 370.83 | | | 3 | $ 1,112.49 | $ 1,112.49 |
| | MB sync, pneu, BHA, t/arm w/o capshard casters, backlock, standard version | 392.92 | | | 1 | $ 392.92 | $ 392.92 |
| | Adjustable keyboard pad-2, select functional option fabric tackboard, flip chart, (1) wood top | 144.29 | 1 | $ 144.29 | | $ 144.29 | $ 144.29 |
| 1 | Visual display board, 48" x 48" FC, select functional option w/keyboard pullout tray | $ 1,260.21 | 1 | $ 1,260.21 | | $ 1,260.21 | $ 1,260.21 |
| | Rctrck cylinder 48" x 117.5" cameron, profile, tripoli, select functional option standard version (2) wood | $ 628.83 | | | 1 | $ 628.83 | $ 628.83 |
| | Tripoli conf table, racetrack 48" x 117" -3 select functional option chamfer edge (1) wood | $ 1,533.06 | 1 | $ 1,533.06 | | | $ 1,533.06 |
| | 5 drawer lateral file, radius case 36 inches – LDoH select functional option lock drawer, hanging bar | $ 654.24 | | | 1 | $ 654.24 | $ 654.24 |
| 2 | drawer lateriall file radius case 30 inches - LDoH, select functional option lock drawer, hanging bar | $ 286.23 | 2 | $ 572.46 | | $ 572.46 | $ 572.46 |
| | 5 drawer lateral file, radius case 30 inches – LD0H select functional option lock drawer, hanging bar | $ 569.17 | 2 | $ 1,138.34 | | | $ 1,138.34 |
| | Bookcase, 4 adjustable shelves – 64" x 36" select functional option standard version | $ 519.18 | 2 | $ 1,038.36 | | | $ 1,038.36 |
| | Composites guest chair hourglass back, select functional option standard version | $ 354.96 | 8 | $ 2,839.68 | | | $ 2,839.68 |
| | File/file lock, full ht drwr/ 19" x 17", select functional option standard version | $ 465.12 | 3 | $ 1,395.36 | 1 | $ 465.12 | $ 1,860.48 |
| 7 | Tripoli center drawer, select functional option standard version | $ 92.31 | | | 7 | $ 646.17 | $ 646.17 |
| | Exec height return, 21" x 42" -3, select functional option chamfer edge (1) wood top | $ 431.46 | 3 | $ 1,294.38 | 1 | $ 431.46 | $ 1,725.84 |
| | Door/drawer credenza, full ped 21" x 72" - 3, select functional option, chamfer edge (1) wood top | $ 1,124.55 | 1 | $ 1,124.55 | | | $ 1,124.55 |
| | Reception desk, L-shaped, f/ht gt ped, 82" x 72" - 3L select functional option, chamfer edge, left bridge (1) wood top | $ 3,404.25 | 1 | $ 3,404.25 | | | $ 3,404.25 |
| | Mobile pedestal box/box/file, select functional option standard version | $ 669.12 | | | 1 | $ 669.12 | $ 2,676.48 |
| | Round end desk extension, 30" x 72" - 3E, select functional option chamfer edge, end panel (1) wood top | $ 931.26 | 3 | $ 2,793.78 | 1 | $ 931.26 | $ 3,725.04 |
| | Lateral file, 2 drawers 21 1/2" x 37" -3 select functional option chamfer edge | $ 686.46 | 4 | $ 2,745.84 | 1 | $ 686.46 | $ 3,432.30 |
| | Vertical storage units, 35" x 72" | $ 1,006.23 | 3 | $ 3,018.69 | 1 | $ 1,006.23 | $ 4,024.92 |
| 2 | Straight fabric panel, no power 24" x 44" -T, acoustical, wood top cap | $ 252.39 | 2 | $ 2,007.36 | 2 | $ 504.78 | $ 504.78 |
| 2 | Straight fabric panel, power 24" x 44" -T, acoustical, wood top cap | $ 310.20 | | | 2 | $ 620.40 | $ 620.40 |
| | Straight fabric panel, no power 30" x 44" - T, acoustical, wood top cap | $ 281.06 | | | 1 | $ 281.06 | $ 281.06 |
| | Straight fabric panel power 36" x 44" - T acoustical, wood top cap | $ 354.85 | | | 1 | $ 354.85 | $ 354.85 |
| | Straight fabric panel power 60" x 44" - T acoustical, wood top cap | $ 442.27 | | | 3 | $ 1,326.81 | $ 1,326.81 |
| | Curved fabric finish post 44" - T, acoustical, wood top cap | $ 40.42 | | | 4 | $ 161.68 | $ 161.68 |
| | End of run fab/wood 44" - T, acoustical, wood top cap | $ 33.37 | | | 5 | $ 166.85 | $ 166.85 |
| | Straight fabric finish post 44" -T, acoustical, wood top cap | $ 48.88 | | | 1 | $ 48.88 | $ 48.88 |
| | Base feed module, hardwire -B, select functional option power base | $ 65.33 | | | 2 | $ 130.66 | $ 130.66 |
| | Duplex receptacles (box of 6) -B, select functional option power base | $ 47.00 | | | 2 | $ 94.00 | $ 94.00 |
| | Regular work surface 60" x 24", select functional option w/o grommet laminate surface (possible petition desk | $ 161.21 | 2 | $ 322.42 | 1 | $ 161.21 | $ 483.63 |
| 3 | Straight pedestal drawer 24"-HLN, select functional option 6/6/12 w/lock (possible petition drawer) | $ 322.89 | | | 2 | $ 322.89 | $ 968.67 |
| 4 | 500 table, round X base 30" - E4S0, select functional option fl bins PVC, 29" H, str,no cstr, (2) laminate | $ 211.65 | | | 1 | $ 211.65 | $ 211.65 |

GE Capital, Schedule - Furniture Disposition

| | Qty | Description | Unit Price | Qty | Total |
|---|---|---|---|---|---|
| 2 | 2 | Stacker, poly shell, w/o arms non-ganging, select functional option standard version | $ 64.26 | 2 | $ 128.52 |
| 7-8 | | David Edward: mid back conf. Rom chair com- Haworth, argasso/copper sky | | | |
| 4 | 4 | Sled, cantilever arms w/o caps, glides, standard version | $ 417.26 | 7 | $ 2,920.82 |
| 1 | 1 | Tripoli top, round 42" - 3, select functional option chamfer edge, (1) wood top | $ 345.45 | 4 | $ 1,381.80 |
| 1 | 1 | Round cylinder base - 42" top cameron, profile, Tripoli select functional option standrad version (2) wood | $ 690.54 | 1 | $ 690.54 |
| 2 | 2 | Desk, ful height pedestal 36" x 72" - 3, select functional option chamfer edge (1) wood top | $ 314.67 | 2 | $ 314.67 |
| | | TOTAL | $ 2,412.30 | | $ 16,801.18 |
| | | | | | $ 2,412.30 |
| | | | | | $ 51,833.81 |

Invoice #'s 1429718, 1437734, 1437735

Total Freight, Taxes and installation charges $ 36,167.89      $11,449.15

Total $ 63,282.96

Page 2