**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(Boston Division)**

| | |
|---|---|
| RENAISSANCE WORLDWIDE, INC. ) <br> ) <br> Plaintiff/Counterclaim Defendant, ) <br> ) <br> v. ) <br> ) <br> CEDAR ENTERPRISE SOLUTIONS, INC. ) <br> ) <br> Defendant/Counterclaim Plaintiff, ) <br> ) <br> and ) <br> ) <br> CEDAR USA HOLDINGS, INC ) <br> ) <br> Defendant/Counterclaim Plaintiff. ) <br> ) | Civil Action No.  04-CV-11047 PBS |

**MEMORANDUM IN SUPPORT OF CEDAR USA'S
MOTION TO DISMISS COUNT III OF THE FIRST
<u>AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM</u>**

**I. INTRODUCTION**

Defendant/Counterclaim Plaintiff Cedar USA Holdings, Inc. ("Cedar USA"), by counsel and pursuant to Fed. R. Civ. P. 12(b)(6), respectfully submits this memorandum in support of its motion to dismiss Count III of the First Amended Complaint of Plaintiff/Counterclaim Defendant Renaissance Worldwide, Inc. ("Renaissance").  As set forth below, the argument in support of this motion is short and simple — the contract on which Renaissance bases its claims, by its terms, simply does not create the obligations alleged.

In Count III, Renaissance asserts a contractual indemnification claim against Cedar USA, which it contends arises under the Stock Purchase Agreement between the parties. Specifically, Renaissance claims that the Stock Purchase Agreement obligates Cedar USA to indemnify Renaissance for losses resulting from the alleged default on a London, U.K. office lease ("the London Lease"). The plain language of the Stock Purchase Agreement, however, creates no obligation of any sort for Cedar USA relating to the London Lease. Count III accordingly should be dismissed for failure to state a claim.

## II. PLAINTIFF'S ALLEGATIONS

In the First Amended Complaint, Renaissance alleges that under the Stock Purchase Agreement, dated September 20, 2000, Cedar USA purchased from Renaissance stock in The Hunter Group, Inc. (which later was renamed CESI), and Renaissance Worldwide Limited ("RWL"). (First Am. Compl. ¶¶ 5, 8, Ex. A.) The Stock Purchase Agreement is attached as Exhibit A to the First Amended Complaint. It contains various covenants, representations and warranties, and creates specific indemnifications that run between the parties. (E.g., id., Ex. A § 8.2 ("Indemnification").)

Renaissance's London Lease claim relates to office space that RWL had leased from Coal Pension Properties Limited in 1999, before its sale to Cedar USA. (Id. ¶ 13.) Renaissance guarantied the London Lease obligations of RWL to Coal Pension Properties

Limited.  (Id. ¶ 14.)  After RWL defaulted under the London Lease,[1] Coal Pension Properties Limited asserted claims against Renaissance as guarantor.  (Id. ¶ 15.) Renaissance alleges that in 2004, it settled the claims of Coal Pension Properties Limited for a payment of $348,706.23.  (Id. ¶ 16, Exhibit D.)  In addition, Renaissance claims that it incurred attorneys' fees and costs of $77,614.23 in connection with the settlement. (Id.)

On the basis of these factual allegations, Renaissance alleges in Count III that "[p]ursuant to, among other provisions, Sections 8.2 and 8.4 of the Stock Purchase Agreement, Cedar USA Holdings, Inc. is obligated to indemnify Renaissance for the damages incurred by Renaissance related to the claims asserted by Coal [Pension Properties Limited]."  (Id. ¶ 17.)  Renaissance seeks indemnification for the above settlement payment, its attorneys' fees and costs.  (Id. ¶¶ 17-18.)[2]

### III.  ARGUMENT

Dismissal under Rule 12(b)(6) is appropriate where, as here, "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Gorski v. New Hampshire Dep't of Corrections, 290 F.3d 466, 473 (1st Cir. 2002).  The court must accept all well-pleaded facts as true, but "need not credit a complaint's 'bald assertions' or legal conclusions."  Glassman v. Computervision Corp., 90 F.3d 617, 628 (1st Cir. 1996) (citations omitted).  The court also may consider the

---

[1] RWL entered liquidation proceedings in late 2003. (First Am. Compl. Ex. D (May 14, 2004 Settlement Agreement).)
[2] Count IV of the First Amended Complaint asserts an identical claim against Cedar Group plc, the corporate parent of Cedar USA and a party to the Stock Purchase Agreement.  Cedar Group plc has not been served with the First Amended Complaint and, therefore, is not called upon to respond.  Nevertheless, to the extent Count III fails to state a claim against Cedar USA, Count IV fails to state a claim against Cedar Group plc.

content of any exhibit to the complaint.  Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000); Stein v. Smith, 270 F. Supp. 2d 157, 163, n.2 (D. Mass. 2003) (considering contents of exhibits attached to complaint without converting motions to dismiss into motions for summary judgment).  If the exhibit "contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations."  Clorox Co., 228 F.3d at 32.

Count III fails to state a claim for indemnification against Cedar USA for Renaissance's London Lease losses because, under the plain language of the Stock Purchase Agreement, Cedar USA assumed no such indemnification obligation.  See generally Nicolaci v. Anapol, No. 02-12167 (GAO), 2003 WL 21877764, *3 (D. Mass. Aug. 8, 2003) (granting Rule 12 motion to dismiss where indemnification clause in Stock Purchase Agreement was "unambiguous" and did not require defendants to indemnify plaintiffs).

Section 8.2(b) of the Stock Purchase Agreement sets forth the indemnification obligations of Cedar USA.  (First Am. Compl. Ex. A, § 8, pp. 30-32.)  It provides, in pertinent part:

> Each of [Cedar USA] hereby agree[s] to indemnify, defend and hold harmless [Renaissance] . . . against and in respect of all Losses after the Closing resulting from:  (i) any breach of any representation or warranty made by [Cedar USA] herein or in any certificate delivered pursuant to this Agreement, and (ii) any breach or non-performance by [Cedar USA] of any covenant, agreement or obligation to be performed by it hereunder.

(Id. § 8.2(b).)  Other provisions in Section 8 limit the parties' respective indemnification obligations and describe rights relating to third-party claims against an indemnified party,

but only Section 8.2 defines the matters for which a party may seek indemnification.  (Id. § 8.)

Therefore, under the language of Section 8.2, to state a claim for indemnification regarding the London Lease, Renaissance must demonstrate that Cedar USA breached "any representation or warranty" or breached or failed to perform "any covenant, agreement or obligation" contained in the Stock Purchase Agreement, and that the breach or non-performance caused the London Lease losses.  (Id. § 8.2(b).)  Renaissance fails to state such a claim.  Cedar USA neither made nor assumed any representation, warranty, covenant, agreement, or obligation concerning the London Lease.  Nor does Renaissance even allege where any such specific representation, warranty, covenant, agreement or obligation was made.  Without an underlying representation, warranty, covenant, agreement or obligation regarding the London Lease, there is no breach.  Without a breach, there is no obligation to indemnify.[3]

This simple analysis is based on the plain language of the Stock Purchase Agreement, which explicitly and clearly spells out the obligations that Cedar USA agreed to assume.  Section 3 of the Stock Purchase Agreement contains the representations and warranties of Cedar USA.  (Id. § 3, pp. 14-16.)  It contains no representation or warranty

---

[3] This case also involves a Transition Services Contract between Renaissance and CESI.  (First Am. Compl. Ex. B.)  Although Renaissance expressly bases it claim against Cedar USA on the Stock Purchase Agreement, the Transition Services Contract is actually where the parties dealt with assumption of leases.  Nevertheless, to the extent that Renaissance may attempt to assert an indemnification claim under the Transition Services Contract, its efforts fare no better.  The indemnification provisions of the Transition Services Contract relative to leases are contained in Statement of Work II – Leased Office Space.  (See First Am. Compl., Ex. B, § 2.)  Statement of Work II expressly concerns three, and only three, leased properties:  those in Chicago, New York and Atlanta.  It does not, however, support Renaissance's claim for indemnification for the London Lease losses.  Statement of Work II does not reference or in any way even relate to the London Lease; its provisions concern the three leases in the United States alone.  Moreover, Cedar USA is not a party to the Transition Services Contract.  As such, the Transition Services Contract could not under any circumstances impose any duties on Cedar USA.

concerning the London Lease.  Section 4 contains the covenants and agreements of the parties.  (Id. § 4, pp. 16-28.)  It contains no covenant or agreement by Cedar USA concerning the London Lease.  Sections 6 and 7 contain the conditions to the parties' obligation to consummate the sale.  (Id. §§ 6-7, pp. 28-30.)  They contain no condition or obligation of Cedar USA concerning the London Lease.  In summary, in no section of the Stock Purchase Agreement does Cedar USA assume contractual liability of any kind concerning the London Lease.

The only instances where the Stock Purchase Agreement even references the London Lease are in sections relating solely to the obligations of Renaissance, not Cedar USA.  Section 2 of the Stock Purchase Agreement contains the representations and warranties of Renaissance.  In Schedule 2.23 of Section 2.23, Renaissance disclosed the London Lease.  Section 4.20 states that the Renaissance "will use commercially reasonable efforts to cause" RWL to enter into a sublease for the London Lease property.  Again, this section is an obligation of Renaissance alone.

Under the express terms of the Stock Purchase Agreement, Cedar USA incurred no indemnification obligation with respect to the London Lease.  Therefore, Renaissance fails to state a claim against Cedar USA for indemnification.

## IV.  CONCLUSION

For the foregoing reasons, Cedar USA respectfully requests that this Court grant its motion to dismiss Count III of the First Amended Complaint for failure to state a claim.

DATED:  November 2, 2004                    CEDAR USA HOLDINGS, INC.
                                            By Counsel


                                            s/Dustin F. Hecker
                                            Dustin F. Hecker
                                            POSTERNAK BLANKSTEIN
                                            & LUND LLP
                                            The Prudential Tower
                                            800 Boylston Street
                                            Boston, Massachusetts  02199-8004
                                            (617) 973-6131 (tel.)
                                            (617) 722-4927 (fax)

                                            Deborah B. Baum
                                            Matthew A. Anzaldi
                                            SHAW PITTMAN LLP
                                            2300 N Street, N.W.
                                            Washington, D.C. 20037-1128
                                            (202) 663-8000 (tel.)
                                            (202) 663-8007 (fax)

                                            Counsel for CESI and Cedar USA